**FILED**
**JULY 31, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MATTHEW DeRYAN, | ) | No. 40403-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHILADELPHIA INDEMNITY | ) | UNPUBLISHED OPINION |
| INSURANCE, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AD-WEST REALTY SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Matthew DeRyan, pro se, appeals after the trial court

summarily dismissed his personal injury lawsuit against Ad-West Realty Services, the

owner of the apartment complex where he lives.  Mr. DeRyan's arguments are mostly

incoherent, and he fails to argue the trial court erred by dismissing his lawsuit.  We

affirm.

FACTS

Matthew DeRyan was a tenant at Sunny Acres, an apartment complex owned and

operated by Ad-West Realty Services.  On January 15, 2021, he fell in the common room

of the apartment complex.  What happened was captured on video; the relevant portion spans less than 15 seconds.

*The video*

The video shows Mr. DeRyan and another resident, Barb Kenney, passing closely by each other in the common room, and a television in the background.  Ms. Kenney is holding an extendable dog leash, and her very small dog is on the other end of the leash.  Mr. DeRyan then sits in a chair facing the television, and says, "'you're on camera.'"  Clerk's Papers (CP) at 330.  A couple seconds later, Ms. Kenney begins to sit in another chair, about 8 feet to Mr. DeRyan's left.  Ms. Kenney's dog is standing in the center of the room on its leash, with the leash extended about 10 feet.

As Ms. Kenney begins to sit, Mr. DeRyan stands.  His gaze is forward, slightly away from where the dog is standing, but the dog is within Mr. DeRyan's peripheral view.  There is nothing obstructing Mr. DeRyan's view of the dog.  As Mr. DeRyan turns slightly to his left to begin walking between Ms. Kenney and her dog, Mr. DeRyan fixes his gaze unnaturally high, as if trying to *not* see the dog and the leash, both of which are obviously only a few feet in front of him.

Mr. DeRyan then walks into the leash with the shin of his left leg, and the slight pressure on the leash causes the leash to extend but because the force is so slight, the small dog remains unmoved, still standing in the center of the room.  Mr. DeRyan then

2

steps over the leash with his right foot and although there is no force against his left shin, he falls.  Neither his lower right leg nor his lower left leg gets tangled in the leash.  But he falls.  After Mr. DeRyan falls, his slight momentum carries him forward and the leash reaches the end of its extension, and it jerks the small dog toward Mr. DeRyan, frightening it.

*Tenant discord*

Previously, Mr. DeRyan had complained to his apartment's management that Ms. Kenney had been spreading untrue allegations and harassing him.  He claimed more specifically that she had confronted him about taking too much coffee, accused him of leaving boiling water unattended, accused him of being high, and trained her dog to not like him.

*Procedure*

Mr. DeRyan filed a pro se complaint in Stevens County Superior Court against Ad-West, Ms. Kenney, and Philadelphia Indemnity Insurance Company.  He alleged Ms. Kenney deliberately caused him to suffer a serious neck injury.  He also alleged that Ad-West was negligent and in breach of contract in relation to Ms. Kenney's misconduct. Mr. DeRyan later filed a "1st Amended Lawsuit" in which he "clarified" that Philadelphia Indemnity and Ms. Kenney were witnesses, not defendants.  CP at 26-27.

Yet he also characterizes Philadelphia Indemnity as "a party to fraud" and "de facto is a party to this case—as witness, and . . . as insurer." CP at 28, 30.

In late February 2024, Ad-West moved for summary judgment against Mr. DeRyan. In its filing, it argued that even if the facts were viewed in Mr. DeRyan's favor, he had failed to establish that Ad-West owed him a duty to prevent him from tripping over another tenant's dog leash. In his filing, Mr. DeRyan responded there was a genuine dispute of material fact, in part because he "has written evidence in hand ready to file as [an] exhibit in [a] future court action." CP at 122. He also contended that Ad-West had "violate[d] all standards of the Rules of Evidence both State and Federal." CP at 122.

On February 14, 2024, Mr. DeRyan filed a "Motion for Continuance," which seems to be related to the timing of Ad-West's summary judgment motion. CP at 78. Mr. DeRyan also wrote that he would later request a continuance for medical reasons but that he did not yet know the date of the surgery that would require a continuance. On the same day, Mr. DeRyan filed an affidavit of prejudice against Judge Radzimski, who had previously been overseeing the case. He later requested a six-month continuance to attend a presurgery medical appointment on the same day as a hearing in his case and then to recover after the surgery. As part of the motion, he also requested that future hearings in his case be scheduled in the afternoon because of transportation concerns.

4

In addition to the request made in his motion, he also separately filed a request for accommodation seeking afternoon hearings. A later filing from Mr. DeRyan showed a tentative surgery date of April 25, 2024.

On March 22, 2024, Mr. DeRyan moved for change of judge, claiming that Judge Monasmith had a previously established conflict of interest. He further claimed that "a fair and impartial trial cannot be had before any Stevens County judge." CP at 157. On March 25, 2024, he filed another affidavit of prejudice, repeating his claim that he did not believe he could have a fair and impartial trial before Judge Monasmith or "any of the '5 rotating' Stevens County judges." CP at 161. His motion is largely based on his claim that "Monasmith was and still is a named witness in [Mr. DeRyan's] federal Lawsuit." CP at 164. On March 26, 2024, the trial court denied Mr. DeRyan's second affidavit of prejudice, noting that it had already made one or more discretionary rulings and that Mr. DeRyan had previously disqualified Judge Radzimski.

On April 2, 2024, the trial court heard Ad-West's motion for summary judgment and Philadelphia Indemnity's motion to dismiss. Mr. DeRyan appeared virtually via WebEx. The court noted that it would not be available in the afternoon and that it was unaware of any authority stating that changing the docket schedule is an appropriate disability accommodation.

5

No. 40403-0-III
*DeRyan v. Philadelphia Indemnity Ins.*

The trial court dismissed Mr. DeRyan's claims against Philadelphia Indemnity with prejudice. It also granted Ad-West's motion for summary judgment and dismissed all claims against Ad-West with prejudice. The summary judgment order indicated that Mr. DeRyan was "present, although muted, [via] WebEx." CP at 232. Mr. DeRyan appealed to this court.

ANALYSIS

A party who chooses to proceed without counsel is accorded no special deference and will be held to the same procedural and substantive requirements as an attorney. *In the Matter of the Vulnerable Adult Petition for Winter*, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020). RAP 10.3(a)(4) requires an appellant to set forth separate concise assignments of error the appellant claims were made by the trial court. An appellate court will not review a trial court ruling if no error is assigned to it. *Weden v. San Juan County*, 135 Wn.2d 678, 689 n.4, 958 P.2d 273 (1998).

In his 47-page opening brief, Mr. DeRyan raises seven separate assignments of error. They are all incoherent. His assignments of error seem to be: (1) a court employee

6

muted him during the summary judgment hearing;[1] (2) the trial court erred by denying a

medical continuance;[2] (3) an administrative error caused a cover page to be excluded

from an exhibit; (4) before his injury, he had complained to the apartment manager about

the danger the dog posed on a long extendable leash;[3] (5) the trial court erred by failing to

review the video;[4] (6) the trial court erred by denying his request for a medical

accommodation;[5] and (7) the trial court erred in denying his request for disqualification.[6]

In every assignment of error, Mr. DeRyan fails to make a meaningful, coherent

argument and fails to provide citations to relevant authorities. For these reasons, we

decline to address his arguments. *See Maslonka v. Pub. Util. Dist. No. 1 of Pend Oreille*

---

[1] The trial court asked Mr. DeRyan multiple times to unmute his audio and gave him directions for how to—"push star six." Rep. of Proc. at 4. The court eventually proceeded with Mr. DeRyan on mute. Several minutes into the hearing, Mr. DeRyan managed to unmute himself, but his voice was muffled and his words were undiscernible.

[2] Mr. DeRyan noted this motion to be heard the afternoon after the morning summary judgment hearing, so the trial court never ruled on it.

[3] Mr. DeRyan broadly cites to clerks papers 37-76 and asserts there is a six-page e-mail supporting his claim that before his injury, he provided notice to the apartment manager that the extendable leash created a tripping hazard. We are unable to locate the six-page e-mail.

[4] But during the hearing, the trial court stated it had reviewed the video.

[5] As stated above, Mr. DeRyan noted the motion to be heard after the summary judgment hearing, so the trial court did not rule on it.

[6] The trial court denied the request because it had previously made one or more discretionary rulings and because Mr. DeRyan had previously disqualified a different judge.

No. 40403-0-III
*DeRyan v. Philadelphia Indemnity Ins.*

*County*, 23 Wn. App. 2d 1, 55-56, 514 P.3d 203 (2022) (an appellate court typically does not review issues that fail to meet the briefing requirements of RAP 10.3(a)(6)), *rev'd on other grounds*, 1 Wn.3d 815, 533 P.3d 400 (2023). Regardless, none of the arguments Mr. DeRyan seems to make would cause us to reverse the trial court's summary dismissal of his action.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.                                    Cooney, J.

8